Thurman, J.
The first question for our consideration is, Did' the court err in permitting the following question to be put to the-witness Warden, who was called to impeach the witness Cogar: “Are you acquainted with Captain Cogar’s reputation for truth and veracity—if so, what is it?” It is contended, that the question should have been, Are you acquainted with the general reputation of Cogar for truth and veracity? And it is said, and truly, that “it is not enough that the impeaching witness professes-merely to state what he has heard others say; for those others may be but few. He must be able to state what is generally said of the person by those among whom he dwells, or with whom he is-chiefly conversant; for it is this only that constitutes his general reputation or character.” 1 Greenl. Ev. 577.
*But it seems to us, that when the unqualified inquiry is made, what is a person’s reputation, his general reputation is-meant; and that the question is commonly so understood. When we say of a man; that he is of good or bad repute, we intend to- *44 •.state the opinion generally entertained of him. If we mean to •speak of a limited reputation, we so express ourselves.
It is argued, however, that this is contrary to the decision in Bucklin v. Ohio, 20 Ohio, 18. It is said, by counsel, that there are two questions settled in that case, viz: 1. That the words “character” and “reputation,” in legal parlance, mean the same thing; 2. That, in order to impeach a witness, the question must bo confined to the general character or the general reputation.
It is true, that the court in that case said, and correctly, that the words character and reputation are often used as synonymous terms, though, in fact, they are not synonymous. And it is also ■true that it was held, that, whatever is the form of inquiry, it is ■only the general reputation of the witness that can be inquired about; but whether the inquiry should be confined to his general reputation for truth, or should extend to his general reputation in .all respects, was left undecided. N o precise form of interrogatory, however, was prescribed, or meant to be. Any question, not leading, that asks for the general reputation of the witness for truth, is sufficient; and if the word reputation, when unqualified, does ■ex vi termini, or in common parlance, mean general reputation, as we think it does, it is unnecessary to prefix the word “general.” The only point in controversy, in Bucklin v. Ohio, was, whether the impeaching witness could state his own personal knowledge of the character, as distinguished from reputation, of the witness sought to be impeached, and his opinion founded on that knowledge. The court held that he could not, and overruled the cases of Wilson v. Runyon, and Seeley v. Blain, Wright, 651, 683, in which a contrary doctrine had obtained. No decision was made on the question now before us.'
*Tho charge to the jury, and the refusal to charge as re•quested, are next objected to. The court was asked to instruct the jury: “That if they believed Cogar was the only owner of the steamboat, and that French was not an owner in the steamboat John Drennon, and that his only interest was that of mortgagee of the boat, and creditor of T. T. Cogar, ho can not be liable for money paid for the boat.”
The court gave the instruction after adding to it the following •words : “unless he represented himself to be an owner, and plaintiff relied on these representations.” It is not claimed that the in-struction, as amended, is bad law, but it is argued that it was erro *45 neous to make the amendment, because there was no proof that rendered it necessaiy. Suppose it was unnecessary, why should we, for that reason, reverse the judgment? We do not see .that it was calculated to mislead the jury in their consideration of the facts, and unless it wore so calculated, how was the plaintiff in error prejudiced by it? We are not able to discover. Again, it is not strictly accurate to say that there was no evidence upon which to predicate the amendment. There was certainly no express testimony that Millard paid, or advanced, his money upon any representation of ownership by French, but circumstances wore given in evidence that possibly tended to prove that such was the fact. However weak these circumstances may have been in the opinion of the court, yet, as it was the province of the jury to' pass upon them, it was not improper to state 'the law that would be applicable to the fact if proved.
The court was next asked to charge the jury: “ That if they believe French, when he received the $500, if he received it in payment of a debt due by Cogar to French, agreed to procure the-clerkship of the steamboat John Drennon, and he, afterward, failed to procure that clerkship, still no recovery can be had in this action, because that could only be recovered on a special count.”
The instruction was refused, and, as we think, very properly.. The case supposed is one of a total failure of the ^consideration for which Millard parted with his money. In such a case, it was competent for him to sue upon the contract, and recover the damages he had sustained by its breach, whether more or less than, the $500 he had paid. Or, he might rescind the contract and recover back the $500 in an action for money had and received. He-took the latter course.
The court was also asked to instruct the jury: “ That it is their duty to give credit to the statements of each witness unless contradicted by other evidence; that in order to discredit the testimony of a witness on account of his general bad character, the witness who is called upon to discredit the witness on account, of general character, must prove that he is acquainted with the witness’ general character for truth and veracity; unless he can testify to his knowledge of such general character, his swearing that he would not believe the witness under oath, is to have no effect on the testimony. For it is not the belief of the witness that is to-govern them, but the fact of the general bad character of' the wit* *46 jiess among his neighbors, and if no such general bad character is proved, the witness is to be considered entitled to the same credit as other witnesses.”
This instruction was refused, for the reason, as we suppose, that it was asked as an entirety, and part of it was, in the opinion of the court, unsound. It would, perhaps, have been better to give ■.so much of it as was unobjectionable, and refuse the residue only ; but the court was not bound to do so. The instruction being prayed for as a whole, it was competent for the court to refuse it ■entirely, if any part of it is inadmissible. Is there any such part? Wo think there is. The first clause affirms that it is the duty of a jury to give credit to the statements of each witness, unless contradicted by other evidence. How is this to be done whore, as is .sometimes the case, a witness’ own statements are directly at variance with each other? And is a jury to be told that no matter what is the manner of a witness, no matter how many and gross are his contradictions, no matter *how apparent may be his ignorance or incapacity, no matter how manifest it may be that he has manufactured or is manufacturing his story, no matter how •clearly his willingness to swear falsely may be seen, no matter how incredible may be his narrative, he must yet be credited “ unless contradicted by other evidence ?” The counsel of the plaintiff in error says that this is not a fair interpretation of the charge.asked, but we think it is that which would naturally be put upon it by a jury. The natural import of the language is, that a witness is to bo believed unless contradicted by other testimony than his own, and this is strengthened by the last clause of the instruction, which assorts that if general bad character for truth is not proved, “ the witness is to be considered entitled to the same credit as other witnesses.” Surely, this, taken in connection with the first clause above quoted, is putting all witnesses, not proved to be of bad •character, upon the same footing, no matter how obvious it may be that some are more entitled to credit than others.
But one more point remains to be considered. It is assigned as error that the court refused to grant a new trial. This point has given us some difficulty. We are not satisfied that the verdict of the jury was right. But this is not enough. Amere difference of opinion between the court and the jury does not warrant the former in setting aside the finding of the latter. That would be, in effect, to abolish the institution of juries, and substitute the court *47 to try all questions of fact. It must be clear that the jury has erred, before a now trial will be granted on the ground that the verdict is against the weight of evidence. In this instance, although wo can not say that our judgments approve the verdict; yet, on the other hand, we are unable to say that it is clearly wrong.

Judgment affirmed.